STATE EX REL. MICHALEK, Petitioner-Appellant, v. LEGRAND, Respondent.

*No. 76–123. Argued March 1, 1977.—Decided May 17, 1977.*
(Also reported in 253 N. W. 2d 505.)

522

For the appellant there were briefs by *George R. Edgar* and *Louis J. Mestre* of Milwaukee Legal Services, Inc., and oral argument by *George R. Edgar.*

For the respondent the cause was argued by *Charles R. Theis,* assistant city attorney, with whom on the brief was *James B. Brennan,* city attorney.

ROBERT W. HANSEN, J. Challenged here is the constitutionality of the rent withholding ordinance of the city of Milwaukee, enacted to compel compliance with the city's building and and zoning code.

Our discussion begins with reviewing the reach and impact of the municipal home rule amendment to the Wisconsin Constitution, providing:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of legislature of state-wide concern as shall with uniformity affect every city or every village. . . ."[1]

Our court has held at an early date that this home rule amendment accomplishes two things, in some measure distinct: (1) It makes a direct grant of legislative power to municipalities;[2] and (2) it limits the legislature in the exercise of its general grant of legislative power.[3] It does the first ". . . by expressly giving cities and villages the power 'to determine their local affairs and government.'" It does the second ". . . by limiting . . . the legislature in its enactments in the field of local affairs of cities and villages."[4] Such a constitutional expression of the will of the people is to be liberally construed.[5]

In defining what is or is not a matter for such empowerment, which is constitutionally granted to cities and villages in this state "to determine their local affairs and government," our court has outlined three areas of

---

[1] Art. XI, sec. 3, Wis. Const.

[2] *State ex rel. Ekern v. Milwaukee,* 190 Wis. 633, 637, 209 N.W. 860 (1926).

[3] *Id.* at 638.

[4] *Id.* at 638.

[5] *Id.* at 638, 639, this court also holding: "The words 'local affairs and government' . . . couched as it necessarily must or ought to be, in a document such as a constitution, in broad and general terms, should have a liberal construction looking toward virility rather than impotency."

legislative enactment: (1) Those that are "exclusively of state-wide concern";[6] (2) those that "may be fairly classified as entirely of local character";[7] and (3) those which "it is not possible to fit . . . exclusively into one or the other of these two categories."[8]

As to the third "mixed bag" category of situations, our court has recognized ". . . that many matters while of 'state-wide concern,' affecting the people and state at large somewhat remotely and indirectly, yet at the same time affect the individual municipalities directly and intimately, can consistently be, and are, 'local affairs' of this [home rule] amendment."[9]

Whether a challenged legislative enactment, state or local, possessing aspects of "state-wide concern" and of

[6] *Muench v. Public Service Comm.*, 261 Wis. 492, 515f, 53 N.W.2d 514, 55 N.W.2d 40 (1952). *See also: Van Guilder v. Madison*, 222 Wis. 58, 82, 267 N.W. 25, 268 N.W. 108 (1936), quoting with expressed approval Chief Judge CARDOZO in *Adler v. Deegan*, 251 N.Y. 467, 167 N.E. 705, 713 (1929), holding: " 'There are other affairs exclusively those of the state, such as the law of domestic relations, of wills, of inheritance, of contracts, of crimes not essentially local (for example, larceny or forgery), the organization of courts, the procedure therein.' "

[7] *Id.* at 515f. *See also: Van Guilder v. Madison, supra*, n. 6, at 81, 82, again quoting with approval Chief Judge CARDOZO in *Adler v. Deegan, supra*, n. 6, holding: " 'There are some affairs intimately connected with the exercise by the city of its corporate functions, which are city affairs only. Illustrations of these I have given, the laying out of parks, the building of recreation piers, the institution of public concerts. Many more could be enumerated. Most important of all perhaps is the control of the locality over payments from the local purse.' "

[8] *Id.* at 515f. *See also: Van Guilder v. Madison, supra*, n. 6, at 82, quoting Chief Judge CARDOZO in *Adler v. Deegan, supra*, n. 6, holding: "A zone, however, exists where state and city concerns overlap and intermingle. The constitution and the statute will not be read as enjoining an impossible dichotomy."

[9] *State ex rel. Ekern v. Milwaukee, supra*, n. 2, at 640.

"local affairs," is primarily or paramountly a matter of "local affairs and government" under the home rule amendment or of "state-wide concern" under the exception thereto is for the courts to determine.

Applying the test of paramountcy, in the *Ekern Case*, our court held that the height of buildings in a particular community was a matter of the "local affairs" of such community within the meaning of that term as used in the home rule amendment.[10] Contrary-wise, in the *Van Guilder Case*, this court held that the compensation of police officers was a matter of "state-wide concern" as that term is used in the home rule amendment.[11]

Our court has subsequently made clear there is no inconsistency in the contrary results thus reached because: "In both cases the court was confronted with a subject of legislation which partook both of the nature of a *'local affair'* and also that of *'state-wide concern,'* but in the former [*Ekern*] case it held that the matter was primarily a *'local affair,'* while the latter [*Van Guilder*] decision held that the *'state-wide concern'* feature was paramount."[12]

Applying this test of paramountcy to the ordinance before us, enacted by the Milwaukee Common Council to secure compliance with the provisions of the city's building and zoning code, we do not hesitate in holding it to be primarily and paramountly an enactment that is a matter of the "local affairs and government" of such city and, as such, authorized by the home rule amend-

---

[10] *State ex rel. Ekern v. Milwaukee, supra,* n. 2, at 641, the court stating, ". . . height of buldings in a particular community is a problem and affair which much more intimately and directly concerns the inhabitants of that community than the casual visitor or the other parts of the state, and it is therefore a 'local affair' of such community within the [home rule] amendment."

[11] *Van Guilder v. Madison, supra,* n. 6.

[12] *Muench v. Public Service Comm., supra,* n. 6, at 515j.

ment to the state constitution. Keeping that holding in mind, we now proceed to examine the challenges raised on this appeal to the constitutional validity of this ordinance.

The first arrow that the challenger puts to his bow is that the enactment of a rent withholding ordinance by the city here is an attempt to legislate in an area which has been preempted by a specific state statute. Respondent refers to sec. 280.22, Stats., which applies only in counties having a population of 100,000 or more, and which declares that residential buildings which do not comply with local building codes are a public nuisance. The statute further provides for the appointment of a receiver in such situations, the receiver to be empowered to collect rents to make needed repairs and to abate the public nuisance.

Since the ordinance here challenged is held to be in the field of "local affairs and government" under the home rule amendment, the doctrine of preemption does not apply. In an area solely or paramountly of statewide concern, the legislature may either delegate to local units of government ". . . a limited authority or responsibility to further proper public interests,"[13] or may preempt the field by expressly banning local legislative action as to such matter of statewide concern. As to an area solely or paramountly in the constitutionally protected area of "local affairs and government," the state legislature's delegation of authority to legislate is unnecessary and its preemption or ban on local legislative action would be unconstitutional.

Even if there were conflict or potential for conflict between the challenged ordinance—enacted to secure

---

[13] *Menzer v. Elkhart Lake,* 51 Wis.2d 70, 78, 186 N.W.2d 290 (1971).

compliance with the local building and zoning code, and the state statute—providing for receivership to abate nuisances, it would be the doctrine of paramountcy, not the concept of preemption, that would here be applicable. Recently, in the *Beloit Case,* which involved a voiding-by-referendum provision in a state statute relating to sewage connection orders, this court found pollution control a clear matter of statewide concern and, on the other side of the scale "matters of purely local concern relating to the tax base."[14] As to conflict between such statewide concern and such local affair, our court said ". . . it would not be difficult to find that voiding of a sewerage connection order to serve such purely local concerns 'blocked' advance of the paramount interest involved."[15]

However, in the instant case, while the purposes served are related and the authorized procedures are similar, we find neither conflict nor potential for conflict between the challenged ordinance and sec. 280.22, Stats. They are not locomotives on a collision course. Rather each moves on its own track, parallel and not too far apart, traveling in the same direction. With the ordinance on track to further a local affairs concern and the statute on track to advance a matter of statewide concern, we see no constitutional reason to derail either. Neither one blocks the way of the other, so both can here proceed, one being a valid exercise of municipal lawmaking authority under the home rule amendment and the other, it would appear, a valid enactment of the state legislature in a field of statewide concern.[16]

[14] *City of Beloit v. Kallas,* 76 Wis.2d 61, 66, 67, 250 N.W.2d 342 (1977).

[15] *Id.* at 67. The court held the *Beloit Case* presented "a crunch between two matters of statewide concern," upholding the statute challenged as a proper legislative accommodation of the two matters of statewide concern involved.

[16] With no conflict between ordinance and statute, and no potential for conflict, we do not give consideration to the undis-

The second arrow put to the challenger's bow is that the rent withholding ordinance impermissibly conflicts with state enactments involving landlord-tenant and eviction procedures. Respondent's claim is that the ordinance is in direct conflict with ch. 704, Stats. Particular reference is to the sections of that chapter dealing with notice terminating tenancies for failure to pay rent,[17] and termination of tenancies under a lease for one year or less.[18]

Before dealing with the consequences of a claimed conflict, we must first determine whether conflict in fact exists. As to statutory provisions for termination of tenancies for reasons other than nonpayment of rent, we find no conflict because the rent withholding ordinance does not deal with or relate to termination for such reasons. As to termination for nonpayment of rent, that comes into play only when "default" has occurred, and "default" is statutorily defined to occur ". . . when a tenant fails to pay rent when due."[19]

However, that would not describe the status of a tenant who, under the ordinance, pays his or her rent into an escrow account, to be paid to the landlord when building code violations are corrected. The contention of respondent appears to be that, under either common law or a statute reflecting this position, a landlord has

cussed question whether the home rule amendment reference to "enactments of legislative and state-wide concern as shall with uniformity affect every city and every village," (Art. XI, sec. 3, Wis. Const.) includes or does not include a statute applying only to counties with over 100,000 population. *See: State ex rel. Ekern v. Milwaukee, supra,* n. 2, at 642, noting: "We also reserve a decision upon the important question as to how far, if at all, this [home rule] amendment does away with the right of the legislature to now enact laws differing in their effect or application to or in any of the several classes of cities."

[17] Sec. 704.17(1) (a), Stats.
[18] Sec. 704.17(2) (a), Stats.
[19] Sec. 704.17(1) (a) and (2) (a), Stats.

the unqualified right to have rent payments paid to him when due without any withholding in an escrow account until certain repairs are made, solely by reason of his private lease agreement.

Without fully analogizing the situation with that of receiver to collect rents appointed in foreclosure actions, it should be evident that a landlord's rights under a lease agreement to have rents paid *to him* when due may be limited for appropriate reason by appropriate legislative or judicial action.[20] Our court has noted that there are ". . . numerous instances wherein this court and other courts relied upon the reserved police power of the state to preserve and protect the public welfare, even though it meant impinging on rights or privileges which private parties sought to secure by contract."[21]

We find no conflict between ch. 704, Stats., and the challenged ordinance, and respondent's brief is hardly helpful in locating one. If the contention is that there is an unqualified right to have rent payments made as provided in a lease arrangement under all circumstances, we find it clear that ". . . the obligation of contract is not an absolute right, but is one that may be obliged to yield to the compelling interest of the public—the exercise of the police power."[22] By either route, with no

[20] *See: Pines v. Perssion,* 14 Wis.2d 590, 111 N.W.2d 409 (1961) and *Earl Millikin, Inc. v. Allen,* 21 Wis.2d 497, 124 N.W.2d 651 (1963) (limiting a landlord's right to receive rent where landlord fails to maintain rented premises in habitable condition). *See also: Hannon v. Harper,* 189 Wis. 588, 208 N.W. 255 (1926) (establishing failure of landlord to ensure the covenant of quiet enjoyment as defense to continued payment of rent). *Besinger v. McLoughlin,* 257 Wis. 56, 42 N.W.2d 358 (1950) (dealing with constructive eviction of a tenant).

[21] *State ex rel. Bldg. Owners v. Adamany,* 64 Wis.2d 280, 292, 219 N.W.2d 274 (1974), citing *Kuhl Motor Co. v. Ford Motor Co.,* 270 Wis. 488, 71 N.W.2d 420 (1955).

[22] *Id.* at 292.

conflict or police power prevailing, we arrive at the conclusion that this challenge reveals no constitutional infirmity in the ordinance.

The third and final question relating to the constitutionality of the challenged ordinance is whether such ordinance provides due process to lessors or landlords prior to the withholding of rent payments under the ordinance. Supplementary briefs were requested and submitted by the parties and the attorney general as to whether due process requirements were met.

Rent withholding under the ordinance is a sanction or adverse consequence of alleged building code violations. Thus, before it can be imposed, decisions of the United States Supreme Court make clear that the lessor or landlord affected by the proceeding must be accorded due process. Whenever a person is deprived—even temporarily—of a property interest, the Fourteenth Amendment due process clause of the United States Constitution requires that he be given an opportunity to be heard "at a meaningful time and in a meaningful manner."[23]

In a case involving the temporary deprivation of welfare benefits, the high court mandated that such "meaningful" opportunity to be heard, preliminary to an adverse consequence, should include: (1) Timely and adequate notice detailing the reasons for a proposed termination; (2) an effective opportunity [for the recipient] to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally; (3) retained counsel, if desired; (4) an impartial decision maker; (5) a decision resting solely on the legal rules and evidence adduced at the hearing; and (6) a statement of reason for the decision and the evidence relied

[23] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). *See also: Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

on.[24] In a subsequent decision, involving temporary loss of social security disability benefits, the high court found less stringent due process safeguards adequate.[25] Nevertheless, the detailed guidelines in the *Goldberg Case*, whether or not here *in toto* required, can serve as a guide to evaluating the adequacy of the hearing provisions in this ordinance.

We now turn to the due process safeguards applicable to the case at bar. As to notice of the existence of code violations, the ordinance provides for service of notice, such notice to: identify the lessor by name and address, specify the date of notice, give a description of the real estate where the claimed code violation exists, identify the ways in which the lessor has violated the code, indicate a reasonable time within which the lessor must correct the violation, specify the possible consequence of failure to correct the violations within the prescribed period of time, and the procedures to be followed in obtaining review.[26]

As to receipt of required notice sufficiently in advance of any proposed governmental action so as to allow a meaningful opportunity to choose to contest or waive contest, the ordinance provides that the notice given becomes an order within twenty days of its service upon lessor, unless the lessor requests a hearing.[27] Thus, upon being served with notice of the existence of code violations, the landlord or lessor has twenty days within which to request a hearing and thereby postpone or

[24] *Goldberg v. Kelly*, 397 U.S. 254, 268–271 (1970).

[25] *Mathews v. Eldridge*, supra, n. 23, the high court holding that in most instances something less than an evidentiary hearing is sufficient.

[26] Sec. 51-2, Milwaukee Code of Ordinances.

[27] Sec. 51-3(3)(a). (Sec. 51-4(1)(b)'s incorporation of sec. 51-3 results in an automatic stay of an inspector's authorization to withhold rent until the hearing before the appeals board, if requested, has been completed.)

prevent issuance of an order authorizing rent withholding.

As to the nature and scope of the opportunity to challenge the proposed action, the ordinance in question provides for an evidentiary hearing before the Housing Code Enforcement and Appeals Board of the City of Milwaukee.[28] The opportunity to personally appear before such board is assured.[29] The right to be represented by counsel, we hold, is likewise assured.

The lessor may present his own evidence and witnesses to show why rent withholding would not be justified under sec. 51–4.[30] If this right to present evidence did not include the right to challenge the finding of the building inspector as to the existence of building code violations, on which the proposed rent withholding is bottomed, we would see a question as to constitutional sufficiency of procedural safeguards.

However we construe the hearing to be a de novo-type hearing, with the building inspector required to establish the fact of the building code violations on which the right to withhold rent payments is predicated. With the burden of proof on the building inspector as moving party, and with the lessor entitled to challenge the basis for the proposed rent withholding, we find no

---

[28] Sec. 51–3(3)(b). (Within ten days of receipt of a request for a hearing the board must set a time and place for the hearing and give the lessor written notice thereof. This hearing must be commenced within 30 days of the date of filing of the request for the hearing, but may be postponed where the lessor has provided good cause for such adjournment.)

[29] Sec. 51–4(4), through its incorporation of sec. 51–3 procedures.

[30] Sec. 51–3(3)(b), providing that at the hearing petitioner "shall be given an opportunity to be heard and to show cause why such notice should be modified or withdrawn."

basis for claim that the hearing afforded is constitutionally inadequate.

Following the hearing, the board may affirm, reverse or modify both the authorization to withhold rent and the determination of the building inspector that a housing code violation exists.[31] A taped record is required as to every meeting of the board.[32] Authority for the lessor to appeal the board's decision to the circuit court is provided.[33] Finally, it is to be noted that maximum impartiality in the decision-reaching hearing is provided by the requirement that: "No member of the Board shall participate in any hearings or vote on any appeal in which he has a direct or indirect financial interest, or is engaged as a contractor, or is engaged in the preparation of plans and specifications, or in which he has any personal interest."[34]

With these procedural safeguards going beyond the requirements of *Mathews v. Eldridge, supra,* and, in fact, meeting the higher requirements of *Goldberg v. Kelly, supra,* probably not here mandated *in toto,* we hold the ordinance as drafted ensures that no landlord or lessor will be deprived of his property interests without a full opportunity to challenge the proposed rent withholding action before it is undertaken. No basis for claim of denial of due process therefore exists. Summarizing what is above set forth, we find no basis for any claims of constitutional infirmity relating to sec. 51-4, Milwaukee Code of Ordinances, and accordingly hold the ordinance to be constitutionally antiseptic.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.

[31] Sec. 51-3(4) and sec. 51-4(1) (b).
[32] Sec. 51-3(2) (c) 4.
[33] Sec. 51-3(5) (b).
[34] Sec. 51-3(2) (c) 2.